## ROSS v HOCKING VALLEY RY CO

Ohio Appeals, 2nd Dist, Franklin Co

Decided March 4, 1931

Messrs. Bernsteen & Bernsteen, Mr. J. E. Mathews, and Messrs. Cowan, Adams & Adams, Columbus, for plaintiff in error.

Messrs. Wilson & Rector, Columbus, for defendant in error.

HORNBECK, J.

We deem it sufficient to say, generally, that we find no error in the particulars asserted in the second, third, fourth and fifth specifications. Defendant's request No. 2 before argument, which was given, reads: "The plaintiff was required to exercise ordinary care for his own safety in walking upon the planked walkway between the tracks. Such ordinary care required that the plaintiff, who was in the full enjoyment of his faculties of hearing and seeing, before getting into close proximity to the rail, should use such faculties for the purpose of discovering and avoiding danger from an approaching train; and the omission to do so, without reasonable excuse therefor, would be negligence on the part of the plaintiff."

We believe that this is a sound exposition of the duty of the plaintiff to exercise ordinary care for his own safety in a place of possible danger.

The error in the general charge complained of is as follows: "The operatives of the locomotive in question had the right to assume that the plaintiff would use ordinary care under the circumstances for his own welfare, and would exercise his ordinary faculties of sight and hearing to ascertain the approach of a locomotive, and had a right to assume that upon warning being given he would step away from a position of danger."

Of course it is doubtful practice to specify with particularity just what an individual is required to do in the exercise of ordinary care, and this is the particular in which this charge is attacked, and the charge would have been better if warning had been qualified by the word "timely" or the word "seasonable." However, we cannot say that the charge was improper under the facts in this case, wherein the plaintiff was an employee,

thoroughly acquainted with the bridge and tracks over which he was walking, and familiar with the regularity and frequency of moving trains at this place, and thoroughly informed of the danger incident to proximity to said tracks.

Nor do we find any error in the general charge touching the last chance doctrine. The trial court followed the law as we understand it at this time.

Nor can we say that the verdict was manifestly against the weight of the evidence; nor caused by passion or prejudice on the part of the jury.

One unassailable view of the evidence upon which the general verdict of the jury might be supported is that the plaintiff's negligence contributed in an equal or greater degree than the negligence of the defendant company to cause his injuries.

We are left then to a consideration of the refusal of the court to give plaintiff's request No. 5 before argument, which is as follows: "If you find that an employee or employees of the defendant upon the engine could, in the exercise of ordinary care, have discovered plaintiff in the situation of danger in time to have avoided injuring him, and you further find that plaintiff, at or preceding the moment of the injury, was free from negligence, or that his negligence was slight, and that the negligence of the defendant was greater in comparison, providing you find the defendant guilty of negligence in some of the respects charged in the petition and submitted for your consideration, then the plaintiff is entitled to recover."

The court had given this charge under plaintiff's request No. 4, except that No. 4 read: "If you find that any employee or employees of the defendant upon the engine **discovered** the plaintiff in a situation of danger in time to avoid injuring him," etc. Whereas No. 5 provided: "If you find that an employee or employees of the defendant upon the engine could, in the exercise of ordinary care, have discovered plaintiff in the situation of danger in time to have avoided injuring him," etc.

The question is raised, was charge No. 5 a statement of the last chance doctrine, and, if so, was plaintiff entitled to it?

We will consider whether it was a charge touching the primary duty of defendant toward plaintiff, or a last clear chance instruction.

It will be necessary to review as briefly as possible some of the evidence, and in doing so we will consider it in the light in which it appears most favorable to the plaintiff. We do this because the plaintiff had a right to any proper charge of the law of the case upon any theory as to the happening of the occurrence by which he was injured which the jury could have adopted from the evidence.

The evidence discloses that the Mound street bridge was approximately 600 feet long. The locomotive which struck plaintiff was moving slowly, drifting, the brakeman says, at a speed of 8 to 10 miles per hour; at a speed of 12 to 14 miles per hour, the fireman says. Plaintiff claimed and testified that at the time he was struck, and for a distance of 100 feet before, he was walking near the edge of the narrow walkway; that when he entered the bridge, and again when he veered over to the edge of the walkway, he looked out to the north to see if there was an approaching train; that he had walked from 200 to 300 feet into the bridge when struck; that he was struck by the overhang of the locomotive, which he says extended over the track two, two and one-half or three feet. Mr. Bain, the foreman of the defendant company, says that the overhang of the largest locomotive traveling over the tracks under consideration is 34 inches; that the overhang of the engine which struck plaintiff is 32¾ inches; that the distance from the eastern rail to the closest edge of the walkway is 33 inches. The plaintiff states that he was struck upon the right shoulder by the cylinder of the locomotive, and in this he is corroborated by one of the crew. So that it is evident that the margin of safety for plaintiff from the overhang of the locomotive, if walking on or near the edge of the narrow walkway, under the most favorable testimony for the defendant company, was very meager. Whether or not he was on the narrow part of the walkway, if he did not change his course in the last 100 feet, he would at all times be in the same dangerous proximity to the track. If his shoulder was in line with the edge of the narrow walkway he would have but a quarter of an inch between him and the overhang of the locomotive. Plaintiff in this position of nearness to the rail for a distance of 100 feet in the direct line of vision of the brakeman and fireman could be said by the jury to have been in a position of possible danger, requiring the exercise of due care either by timely lookout or warning, and, if neither of these would be effective, then by slowing down or stopping of the locomotive.

If any of the employees of defendant saw plaintiff, or in the exercise of ordinary care could have seen plaintiff, 100 feet ahead of them in a position indicating danger of being struck by the locomotive, due care might be said to require a warning at the first

opportunity. The plaintiff claims none was given.

The undisputed state of the record discloses that the engineer, Edgar H. Hickman, on the right of the locomotive, did not see the plaintiff at any time. His inability to see the plaintiff is explained by an obstruction of his view by a curve in the track to the west as it approaches the brige, by the steel uprights of the bridge, and, after getting upon the bridge, by the front of the locomotive, which would be between the engineer and the plaintiff.

Myron Flesher, the fireman, whose station was to the left of the locomotive, testified that he did not see the plaintiff until within 20 feet of him. It is evident from the record that he was giving his attention to the stoker and that he was maintaining no lookout ahead as they were passing through the bridge prior to the time that he saw the plaintiff.

Paul Chaney, the brakeman, was the only member of the crew who saw the plaintiff as they entered the bridge, at which time, according to Chaney's testimony, the plaintiff was 200 to 250 feet in the bridge and walking to the south. Chaney says that after he first saw the plaintiff as he entered the bridge he looked back to the north to see if No. 96, another locomotive, was following them into the bridge. He insists in several places in the record that he looked back for two minutes. This, of course, is not true, and is no doubt an improper estimate. But he states that when he again saw plaintiff they were within a little more than an engine length from him. It thus may be deduced that at a distance of from 200 to 250 feet from the plaintiff when they entered the bridge, to which must be added the distance the plaintiff walked before he was struck, up to a little more than an engine length, Chaney maintained no lookout ahead whatever.

The jury could have found that no member of the crew had the plaintiff under observation for a distance of 200 to 250 feet immediately before he was struck, and for 100 feet of this distance the plaintiff's testimony indicated that he was in a position of possible danger.

The pertinence, therefore, of plaintiff's special charge No. 5 becomes evident wherein it states: "If you find that an employee or employees of the defendant upon the engine could, in the exercise of ordinary care, have discovered plaintiff in a situation of danger in time to have avoided injuring him," etc.

The plaintiff in the situation was entitled to a charge covering the primary duty of the employees to exercise ordinary care by maintaining a proper lookout ahead, sounding a warning, and slowing up or stopping the locomotive if ordinary care required it. But if this charge is a last clear chance instruction, we are of opinion that he was not entitled to it in the form in which it was sought. We have had much difficulty in determining whether or not it is such a charge. The difficulty is accentuated by reason of the fact that the necessity of a last clear chance doctrine arises from a purpose to abate the severity of the rule which prevents the plaintiff recovering if he is negligent but his negligence ceases to be an active proximate cause of his injury. But under the Railway Employees' Act (§9018 GC) the negligence of the plaintiff does not prevent his recovery provided it is light in comparison to the negligence of the defendant. It would thus seem that the last clear chance doctrine, because of difficulty of application, as such, has little if any place in this case. However, in so far as the principles of the doctrine can be followed we are bound to observe them.

We are also in doubt whether last chance is pleaded. If it is, it must be found in the third specification of negligence which reads: "Defendant was negligent in failing to slow down or stop said helper engine when the engine crew, in the exercise of ordinary care, either saw or should have seen the plaintiff on the narrow plankway of said bridge at least 300 feet south of the engine which was approaching said bridge, idling and without noise, at a very slow rate of speed, well knowing that the engine could have easily stopped before reaching the point in the narrow plankway which the plaintiff was using in the line of his duty."

We therefore take the view of the case which the plaintiff seems to have adopted in his special charge No. 4. Special charge No. 4 has all the indicia of a last clear chance charge, and as it was requested by plaintiff we must assume that it was presented on that theory.

As we have heretofore indicated, the only change in special request No. 5 is that, instead of enjoining upon the employees of the defendant the necessity of acting after discovering the position of danger of the plaintiff, they were required to exercise ordinary care to discover the position of danger of the plaintiff. In our judgment the charge was not required to be given. We believe that it is a statement of the last clear chance theory of the case.

This case accentuates the difficulty which is presented in last clear chance charges in determining whether or not the obligation enjoined upon the defendant begins after the peril of the plaintiff is discovered

or begins when, by the exercise of ordinary care, it could have been discovered. The decisions of the Supreme Court are not as clear as desired, but in so far as we are able to interpret them, they sustain the action of the trial judge. **Erie Ry Co v McCormick, 69 Oh St 45, 68 N. E. 571; Drown v Northern Ohio Traction Co, 76 Oh St 234, 81 N. E. 326, 10 L. R. A. (N. S.) 421, 118 Am. St. Rep. 844; Kaufman v Cincinnati Traction Co, 17 Oh Ap 243; Toledo, C & O R R Co v Miller, 108 Oh St 388, 140 N. E. 617.**

The position of Ohio on this question is well stated in **45 Corpus Juris, 990:** "In some jurisdictions recovery is permitted only where defendant fails to exercise ordinary care to avoid the injury after becoming actually aware of the peril of the injured person. * * *" Ohio is listed in the states supporting the text.

We are therefore of the opinion that the court was justified in refusing to give this charge as tendered.

No manifestly prejudicial error appearing in the record, the judgment will be affirmed.

Judgment affirmed.

ALLREAD, PJ and KUNKLE, J, concur.

### A Correction

### KOELLSCH v CALVARY CEMETERY ASSOCIATION et

In the above entitled case, published at 11 Abs 341, the paragraph in the second column, just above "ALLREAD, PJ." which reads "A general demurrer was filed to the different defenses of the answer. This demurrer was **sustained** and the action was dismissed." should read "This demurrer was **overruled** and the action was dismissed."

In view of the fact that the circumstances of this case are somewhat unusual, we publish below the entry overruling the demurrer in the Common Pleas Court.

**In the Common Pleas Court of Montgomery County, Ohio**

Rosa Koellsch, Plaintiff,

vs

The Calvary Cemetery Association, et al., Defendants.

No. 66185. Filed March 18, 1931

Entry overruling demurrer of plaintiff, and final judgment to the Calvary Cemetery Asscciation.

This cause came on to be heard to the Court on the Demurrer of Plaintiff to the Second and Third Defenses of The Calvary Cemetery Association, and was submitted to the Court on the records of the case and Briefs of the attorneys. On consideration of which the Court overrules said Demurrer to both said Defenses.

And the Court finding from the record of this case that the Second Defense is absolute as against Plaintiff, and that said Plaintiff is estopped in the premises under the Code in such cases provided to proceed further with said cause, the Petition of Plaintiff is hereby dismissed, and it is ordered that The Calvary Cemetery Association go hence with all its costs. To all of which findings and orders of Court, Plaintiff hereby excepts.

Approved: SNEDIKER, Judge.

Correct:

Burkhardt & O'Brien
Attorneys for Plaintiff
Murphy & Murphy
Attorneys for The Calvary Cemetery Association.